UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Karen Lincoln, et al.,                                    Case No. 3:17-cv-181

           Plaintiffs

    v.                                                            MEMORANDUM OPINION

Watcon, Inc., et al.,

           Defendants


## I. BRIEF BACKGROUND

In June of 2015, Karen Lincoln, Renee Thomas, Margaret Thornewell, Kimberly Orzechowski, Joseph Printke, Chris Ann Stuchel, and Isaac Jordan were employed by the Lucas County Job and Family Services. They worked in a building located at 3210 Monroe Street, Toledo, Ohio. The building is heated by a water circulation system in addition to the use of heat pumps, a cooling tower, and an air recovery unit which circulates air throughout the building. The water for the building's circulation system is provided by the City of Toledo. These employees allege exposure to mist or vapor containing Legionella bacteria, through use of outside water, led to their injuries.

On December 20, 2016, Plaintiffs[1] filed suit in the Lucas County Court of Common Pleas against Watcon, Inc., Baltimore Aircoil Company, Sarmento Mechanical Sales, Inc., the City of Toledo's Division of Water Treatment, the Lucas County Department of Job and Family Services, the Lucas County Board of Commissioners, and John Does 1-10.

---

[1] In their amended complaint, Plaintiffs contend they are all Ohio residents. (Doc. No. 20 at ¶¶ 1-7).

On January 26, 2017, this action was removed by Defendants to the district court. In their Joint Notice of Removal (Doc. No. 1), Defendants contend there is no diversity of citizenship because "Sarmento[2] and the Government Defendants[3]" have been fraudulently joined as parties. (*Id.* at ¶ 13). Twenty-one days later, Defendant, City of Toledo, filed a motion to dismiss. (Doc. No. 17). With leave of the Court, Plaintiffs filed an amended complaint[4] on February 21, 2017. Several of the Defendants filed a motion to stay discovery (Doc. No. 24) and moved to dismiss for failure to state a claim (Doc. No. 25) on February 28, 2017. On April 4, 2017, Plaintiffs filed a motion to remand. (Doc. No. 36).

As all of the issues have been fully briefed by the parties, I first turn to the motion to remand.

## II. THE APPLICABLE LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove any civil action from state to federal court only if the district courts of the United States have original jurisdiction, both at the time of the original action and when the petition for removal is filed. *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); Fed. R. Civ. P. 19(a). Following removal to the district court, a plaintiff may seek remand of the action to state court within thirty days after the notice of removal is filed. 28 U.S.C. § 1447(c). If the court lacks subject matter jurisdiction, remand is proper. *Id.*

Original jurisdiction exists when the dispute involves a federal question or when the amount in controversy exceeds $75,000 and, at issue in this case, there is diversity of citizenship. 28 U.S.C. § 1332. Diversity requires complete diversity between plaintiff's and as to each defendant named

---

[2] The amended complaint identifies Sarmento Mechanical Sales, Inc. as a corporation organized and existing under the laws of the State of Ohio as well as regularly conducting business in Ohio. (Doc. No. 20 at ¶ 10).
[3] The amended complaint identifies the City of Toledo, Lucas County Department of Job & Family Services and the Lucas County Board of Commissioners all as political subdivisions located in the State of Ohio. (Doc. No. 20 at ¶¶ 11-13).
[4] The amended complaint contained no substantive changes to the parties or causes of action as it corrected two clerical errors. (Doc. No. 13).

2

in the complaint. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989), citing *Strawbridge v. Curtiss*, 7 U.S. 267 (3 Cranch)(1806). Federal court subject matter jurisdiction is determined at the time of removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). The removing party bears the burden of establishing subject matter jurisdiction.

Under the doctrine of fraudulent joinder, a federal district court may disregard the status of a non-diverse party joined for the purposes of diversity jurisdiction. In *Casias v. Wal-Mart Stores, Inc.*, the Sixth Circuit set forth the legal standard to be applied in such an analysis:

> Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne*, 183 F.3d at 493 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998) (alteration in original)). A defendant is fraudulently joined if it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law ..." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994) (citation omitted). The relevant inquiry is whether there is "a colorable basis for predicting that a plaintiff may recover against [a defendant]." *Coyne,* 183 F.3d at 493. "The removing party bears the burden of demonstrating fraudulent joinder." *Alexander,* 13 F.3d at 949 (citation omitted).
>
> When deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss. *See Walker v. Philip Morris USA, Inc.,* 443 Fed.Appx. 946, 952–54 (6th Cir.2011). As appropriate, we may "pierce the pleading" and consider summary judgment evidence, such as affidavits presented by the parties. *Id.* The court may look to material outside the pleadings for the limited purpose of determining whether there are "undisputed facts that negate the claim." *Id.* at 955–56.

695 F.3d 428, 432-33 (6th Cir. 2012).

A plaintiff's motive in joining a defendant is immaterial to this determination. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir 1999).

In light of federalism and comity concerns, federal courts must strictly construe removal jurisdiction and resolve all doubts in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109-09 (1941); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

## III. MOTION TO REMAND

A. Positions of the Parties

Plaintiffs seek remand of this action contending there is no diversity of citizenship between the parties under 28 U.S.C. § 1332. Plaintiffs state they have alleged viable claims against both the Government Defendants and the Defendant supplier, Sarmento. In contrast, the Defendants contend there is immunity from liability as to the Governmental Defendants. They also argue Plaintiffs have failed to state viable causes of action against Defendant Sarmento.

B. The Governmental Defendants

1. <u>Claim of Negligence against the City of Toledo, Division of Water Treatment</u>

In their Seventh Cause of Action, Plaintiffs allege the City "established, maintains, and operates a city water supply, a proprietary function as defined by R.C. 2744.01(G)(2)(c)." (Doc. No. 20 at ¶ 84). The City is alleged to have "negligently failed to monitor and treat the water supplied to the City of Toledo including, but not limited to the Monroe Street Building housing the Lucas County JFS". (*Id.* at ¶ 87). "As a direct and proximate result of Defendant Toledo Division of Water Treatment's failure to monitor and treat the water supplied to the City of Toledo, contaminated water was supplied to the Monroe Street Building and used in the Baltimore Aircoil cooling tower." (*Id.* at ¶ 89).

A three-tiered analysis is employed to determine whether a political subdivision is immune from tort liability. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 269-70 (2007), citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-57 (2000).

"The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Id.* "R.C. 2744.01(G)(2)(c) provides that a 'proprietary function' includes '[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a bus line or other transit company, an airport, and a municipal *corporation water supply system*.'" *Fedarko v. Cleveland*, 12

N.E.3d 1254, 1256 (Ohio App. 2014). (Emphasis in original). As noted by the Defendants and as stated in their amended complaint, the Plaintiffs acknowledge the city was engaged in a proprietary function regarding the water supply.

The second tier of the analysis requires the court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Cramer*, 113 Ohio St.3d at 270. The City contends and Plaintiffs do not dispute that the only exception applicable is that under R.C. 2744.02(B)(2):

> Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

Where "R.C. 2744.02(B)(2) excepts only negligence with respect to a proprietary function from immunity, [a plaintiff] must still prove the requisite elements of its negligence claim: duty, breach, proximate cause, and damages." *Inland Prods., Inc. v. Columbus*, 193 Ohio App.3d 740, 757 (2011).

Here, the inquiry focuses on whether the City failed in its duty "to monitor the quality of both the raw and treated water and to make the appropriate chemical adjustments to ensure the water provided [wa]s free of contaminants and safe for use." (Doc. No. 20 at ¶86). The Plaintiffs allege their injuries were caused by "breathing in mist or vapor contaminated with Legionella bacterium found in the Monroe Street Building." (*Id.* at ¶ 29).

Unfortunately for Plaintiffs, there are no regulations, state or federal, which impose guidelines addressing contaminant levels of Legionella. *See* 40 C.F.R. § 141.63 (Maximum contaminant levels for microbiological contaminants but not addressing Legionella); O.A.C. 3745-81-11 to 3745-81-14, and 3745-81-14 (Ohio's primary drinking water rules with no mention of Legionella) and O.A.C. 3745-82-01 (secondary maximum contaminant rules but not addressing Legionella).

Additionally, the Supreme Court of Ohio, albeit in a mandamus action, stated the movants' claims they be provided with "visually clean and chemically pure water" "would still lack merit because

5

they fail to specify the legal duty that is legislatively imposed on the village to provide water that is superior in quality to the Safe Drinking Water Act requirements of federal and state law." *State ex re. Voleck v. Powhatan Point*, 127 Ohio St.3d 299, 302 (2010). *See also Range v. Ford Motor Co.*, 412 F.Supp.2d 732, 734-35 (N.D. Ohio 2005) ("As of March 2001, neither the Federal nor State Government had enacted regulations regarding the sampling, treatment or prevention of *Legionella* bacteria. There are no federal or State statutes or agency-required mandates governing the operation of systems with the potential to amplify *Legionella* bacteria, nor are there any Federal or State guidelines regarding what constitutes a safe or unsafe *Legionella* exposure level.") In sum, there is no identifiable legal duty aimed at detection of Legionella which imposed a duty on the City, effectively ending the analysis in favor of the Defendant.

Assuming *arguendo*, that a duty was found to exist, under the third step of the analysis, the statutory defense contained in R.C. 2744.03(A)(3)[5], regarding discretionary conduct applies here. "A discretionary act under R.C. 2744.03 involves a heightened amount of official judgment or discretion. . . Routine decisions that require little judgment or discretion . . . do not create a defense to liability." *Toros v. Cuyahoga Cty. Bd. of Dev. Disabilities*, No. 99637, 2013 WL 5676279 *8 (Ohio App. 2013). With no requirement to monitor or treat for Legionella, conduct which goes beyond what is statutorily required is not routine and requires a high level of judgment and discretion. For these reasons, the Defendant City is entitled to immunity on the negligence claim.

    2.    <u>Claim of Intentional Tort Against the Lucas County Department of Job & Family Services and the Lucas County Board of Commissioners</u>

In their Eighth Cause of Action, Plaintiffs claim their illnesses, having been caused by the Legionella bacterium in the Monroe Street Building, were attributable to Defendants "tortiously disregarding their duty to Plaintiffs with the deliberate intent to cause them injury, Defendants Lucas

---

[5] The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

County JFS and/or Board of Commissioners, by and through their agents and/or employees, engaged in deliberate acts and/or omissions giving rise to the claim for intentional tort pursuant to Ohio Revised Code Section 2745.01." (Doc. No. 20 at § 97). I disagree.

As recently noted by my colleague in the Southern District of Ohio:

> A claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that the injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded.
>
> *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).
>
> An employee asserting an employer intentional tort claim is subject to a "heightened standard of review" under a Rule 12(b)(6) motion to dismiss "due to the need to deter the number of baseless claims against employers, the importance of preventing every workplace injury from being converted into an intentional tort claim, and the goal of facilitating the efficient administration of justice." *Byrd v. Faber*, 57 Ohio St.3d 56, 60, 565 N.E.2d 584 (1991). Further, although a plaintiff may use the operative "buzz words" in the complaint, this is not sufficient to survive a motion to dismiss. Rather, a plaintiff must "plead the facts with sufficient particularity to show that the employer intended the injury and that the employer knew the injury was substantially certain to occur." *Bullis v. Sun Healthcare Group*, 2012-Ohio-2112, ¶ 8, No. 2011–CA–21, 2012 WL 1657927 (Ohio Ct. App., Miami Cty. May 11, 2012) (holding that the employee's allegations that his employer had knowledge of the parking lot hole that caused his injuries, but failed to correct or warn other employees, did not meet the heightened pleading standard for an employer intentional tort claim).

*O'Connor v. Nationwide Children's Hospital*, 219 F.Supp.3d 673, 680-81 (S.D. Ohio 2016).

Reviewing the allegations before me, Plaintiffs have failed to meet this heightened pleading standard. They do not allege facts sufficient to support the deliberate intent to injure requirement. *See Stolz v. J & B Erectors, Inc.*, No. 1:14-cv-44, 2014 WL 2117048, *4 (S.D. Ohio 2014). As Plaintiffs have not alleged a colorable claim against the Defendants as to intentional tort, the Eighth Cause of Action is insufficient as a matter of law.

C. Claims against Defendant Sarmento Mechanical Sales for Supplier Liability

Plaintiffs bring three causes of action against Sarmento. In their Fourth Cause of Action, they allege supplier liability under R.C. § 2307.78 against Sarmento and Baltimore Aircoil Company. Their Fifth Cause of Action states a breach of implied warranty against Sarmento and Baltimore. Plaintiffs' Sixth Cause of Action alleges breach of an express warranty against Sarmento and Baltimore. It is Sarmento's position that Plaintiffs have not stated a viable cause of supplier liability. Sarmento also contends the breach of warranty claims are preempted by the Ohio Products Liability Act.

1. Supplier Liability Under R.C. § 2307.78

Pursuant to the Ohio Revised Code, a supplier is liable where it was negligent and that negligence was the proximate cause of harm for which the plaintiffs seek to recover compensatory damages. R.C. § 2307.78(A)(1). A second statutory ground for supplier liability occurs where the product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it was the proximate cause of harm of the compensatory damages sought by plaintiffs. R.C. § 2307.78(A)(2).

In their amended complaint, the allegations against Sarmento state the Defendant "negligently performed as a supplier of the Baltimore Aircoil cooling tower through representations to the Board of Commissioners that the Baltimore Aircoil cooling tower could safely and adequately be used to cool the Monroe Street building." (Doc. No. 20 at ¶ 67). The cooling tower "did not conform to the representations made by . . . Sarmento. . . when the product left the control of . . . Sarmento." (*Id.* at ¶ 68). Finally, "[a]s a direct and proximate result of the representations made by Defendants. . . Sarmento. . . regarding the Baltimore Aircoil cooling tower, and the product's failure to conform to the representations, Plaintiffs have suffered" damages. (*Id.* at ¶ 69).

In making a determination on the viability of the pleadings and evidence submitted in support on a remand motion, I am guided by the Sixth Circuit's admonitions to the district court and the removing party regarding the burden incumbent upon the removing party to:

> *present sufficient evidence* that a plaintiff could not have established a cause of action against non-diverse defendants, under state law. *See Alexander*, 13 F.3d at 949. However, if there is a colorable basis for predicting that a plaintiff may recover against, non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party. *Id.* All doubts as to the propriety of removal are resolved in favor of remand. *See id.*

*Walker v. Philip Morris, USA, Inc.*, 443 Fed. Appx. 946, 951-52 (6th Cir. 2011), citing *Coyne*, 182 F.3d at 493.

Sarmento contends there is no viable cause of action under R.C. § 2307.78(A)(2) because the supplier's representation must be made to the plaintiffs. The Defendant cites and relies on a case from this district in support of its argument. *See McGue v. 84 Lumber Co.*, Case No. 3:99CV7546, 2000 WL 641152, *3 (N.D. Ohio 2000) (Carr, J.) That case is distinguishable as it was before my colleague on a motion for summary judgment *after* discovery had been undertaken and completed, not on a motion to remand.

Next, the Defendant takes issue with the "conclusory allegations of representations by Sarmento, which were expressly contradicted by the only substantive proof on this issue, the Sarmento affidavit." (Doc. No. 37-1 at p. 11). The affidavit of Brett Sarmento makes a number of representations to support its position but I must be careful in making a creditability determination at this juncture of the proceedings as discovery has not yet even begun. *See Brentar v. Ford Motor Co.*, No. 09-CV-2685, 2010 WL 3210955, *9 (N.D. Ohio 2010) ("Merely presenting an affidavit stating that [a party] does not typically make representation in connection with the sale . . . [or] does not recall making any representations to the City . . ., is insufficient for this court to conclude that no such representation was made." To accept the Sarmento affidavit in the absence of any discovery regarding the representations made regarding the sale of the air cooling tower, is tantamount to a credibility determination at this juncture of the proceedings.

Such action converts this more lenient Rule 12(b)(6) analysis to an undisputed Rule 56 analysis contrary to the this Circuit's admonition of resolving all doubts in favor of disputed questions of fact

in the non removing party's favor. While the affidavit clearly favors Sarmento's position, under the more lenient 12(b)(6) standard, I cannot find that it is beyond doubt that the plaintiffs can prove no set of fact to support their claims. The allegations in this Fourth Cause of Action, like the one before Judge O'Malley in *Brentar,* "track[s] the basic elements of a 'failure to conform' claim under the OLPA: the Complaint alleges that [defendant] made a representation to which the [item] failed to conform when it left the [defendant's] control." 2010 WL 3210955, *9.

As I find there is a viable cause of action alleged in Plaintiffs' Fourth Cause of Action, I cannot find Sarmento has been fraudulently joined as a party to this lawsuit.

> 2.  <u>Breach of Warranties, Implied and Express, in the Fifth and Sixth Causes of Action</u>.

Defendant Sarmento also contends the Plaintiffs' common law breach of implied and express warranty claims are preempted and subsumed by the Ohio Products Liability Law. I agree.

"In product liability cases involving breach of warranty, when it is impossible to separate a plaintiff's warranty claim from the product at issue, then the common law claim is subject to preemption by the OLPA." *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F.Supp.2d 785, 797 (N.D. Ohio 2010), citing *Miles v. Raymond Corp.*, 612 F.Supp.2d 913, 923 (N.D. Ohio 2009) and R.C. § 2307.71(A)(13)(c). *See also Cervelli v. Thompson/Center Arms*, 183 F.Supp.2d 1032, 1045 (S.D. Ohio 2002) ("With respect to his claims for breach of implied warranty, the Ohio Products Liability Law preempts any common law claims Plaintiff asserts"). Plaintiffs offer no argument or authority in support of a contrary position. Accordingly, I find the Fifth and Sixth Causes of Action do not state viable claims as a matter of law.

## IV. CONCLUSION

For the reasons stated above, I find there are no viable causes of action against City of Toledo, Division of Water Treatment, the Lucas County Department of Job & Family Services, and

the Lucas County Board of Commissioners. I further find the claims against Sarmento Mechanical Sales, Inc. sounding in breach of express and implied warranties are not viable claims.

I find the Fourth Cause of Action against Sarmento, sounding in supplier liability, rises to the level of a viable claim. In determining Sarmento has not been fraudulently joined as to the Fourth Cause of Action, diversity of citizenship is not complete, and this Court is without subject matter jurisdiction.

Accordingly, the Plaintiffs' motion to remand (Doc. No. 36) is granted. Defendants' motions to dismiss (Doc. Nos. 17 and 25) as well as the motion to stay discovery (Doc. No. 24) are denied as moot.

The Clerk is directed to remand this case to the Lucas County Court of Common Pleas.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge